(166 App. Div. 348)

MILLER v. NORTH HUDSON CONTRACTING CO.   (No. 43/46.)

(Supreme Court, Appellate Division, Third Department.   March 3, 1915.)

MASTER AND SERVANT ☞88—ACTION FOR INJURY—RELATION OF PARTIES.

   The Labor Law (Consol. Laws, c. 31), enacted to confer additional benefits and protection upon employés, contemplated the broad general relation created when an employé enters the plant of another, where the "ways, works or machinery" exist, and there subjects himself to the authority of some person intrusted by the owner with the duty of "superintendence" and with "authority to direct, control, or command"; and the driver of a team, which defendant, a contractor, had hired from one B., whose movements were being solely directed by defendant's foreman, was defendant's employé, within the rule that one employed and paid by one person may under certain circumstances and for a particular transaction become the employé of another.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 144–151; Dec. Dig. ☞88.]

   Woodward, J., dissenting.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from Trial Term, Albany County.

Action by Albert Miller against the North Hudson Contracting Company. Judgment for plaintiff, entered on verdict, and defendant appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOW-ARD, and WOODWARD, JJ.

Neile F. Towner, of Albany, for appellant.

Rollin B. Sanford, of Albany, for respondent.

HOWARD, J. The defendant hired teams for its work from one Brockley. Brockley, not having teams enough of his own to supply the defendant, hired a team from Gates. The driver of Gates' team is the plaintiff. While working on the defendant's job and driving Gates' team, the plaintiff was injured, so he alleges, by reason of the defendant's negligence. At the time of the accident the movements of the plaintiff were being directed by the defendant's foreman, who had exclusive control and authority over the plaintiff while he remained on the job. We shall not review the merits of the case, for we believe the verdict to be supported by the evidence. One question arises, however, which demands consideration. Was the defendant an employer of the plaintiff, within the meaning of the Labor Law?

Literally, of course, the defendant did not employ the plaintiff. But in attempting to "extend and regulate the liability of employers," as the title of the act says, and to confer additional benefits and protection upon the employé, did the Employers' Liability Law have in mind the relation created by the mere contract of hiring, or the broad, general relation created when the laborer enters the plant of another, where the "ways, works or machinery" exist, and there subjects himself to the authority of some person intrusted by the owner of the plant with the duty of "superintendence," and with "authority to direct, control, or command"? Clearly it was the latter. One of the purposes of the law is to guard against the negligence of persons intrusted with superintendence and authority. Guard whom? Guard all those who are permitted to work in the plant. In great enterprises there are undoubtedly many instances where laborers are supplied to the master indirectly, as the plaintiff was here. Are all such persons outside the pale of the Labor Law? To hold this would be to open an avenue for the complete subversion of the Employers' Liability Law, now incorporated in the Labor Law. By having their laborers employed and paid by a third party, and sent to them through such third party, employers could thus escape all liability. Such an evasion was not contemplated by the Legislature; it cannot be tolerated by the courts.

Our conclusion is upheld by the general principle that a person who is employed and paid by one person may, nevertheless, under certain circumstances and for a particular transaction, become the servant of another. This principle is well established by authority. In Coughlan v. Cambridge, 166 Mass. 268, 44 N. E. 218, it was said:

"It is well settled that one who is the general servant of another may be lent or hired by his master to another for some special service, so as to be-

come as to that service the servant of such third party. The test is whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master, or becomes subject to that of the party to whom he is lent or hired."

In Wyllie v. Palmer, 137 N. Y. 248, 33 N. E. 381, 19 L. R. A. 285, Judge O'Brien, writing the opinion, said:

"The master is the person in whose business he (the servant) is engaged at the time, and who has the right to control and direct his conduct."

In Shear. & Redf. on Neg. (6th Ed.) p. 390, we find this language:

"Servants who are employed and paid by one person, may nevertheless be ad hoc the servants of another in a particular transaction, and that, too, where their general employer is interested in the work."

In Standard Oil v. Anderson, 212 U. S. 215, 29 Sup. Ct. 252, 53 L. Ed. 480, the court said:

"It sometimes happens that one wishes a certain work to be done for his benefit, and neither has persons in his employ who can do it, nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work, and places them under his exclusive control in the performance of it, those men become pro hac vice the servants of him to whom they are furnished."

Within the principles above propounded, the plaintiff was, beyond any doubt, the servant of the defendant; and within the same principles, as well as within the spirit and intent of the original Employers' Liability Law, he was the employé of the defendant. The judgment and order appealed from should be affirmed.

Judgment and order affirmed with costs. All concur, except

WOODWARD, J. (dissenting). I dissent from the reasoning and the conclusion reached in this case. The complaint alleges that the defendant is a domestic corporation; that it was engaged on the 3d day of September, 1913, in grading and paving a certain street in the city of Albany, known as Delaware avenue; that in connection with the work aforesaid the defendant employed the plaintiff and a team of horses and wagon, which the plaintiff at that time was driving; that on the 3d day of September, 1913, the plaintiff was employed by the defendant in connection with its work in grading and paving said Delaware avenue; that the plaintiff, while so employed, was engaged with a wagon and team of horses drawing dirt to be unloaded to fill in and grade the said street and places adjacent thereto; that the method of unloading the dirt from the wagon upon which the plaintiff was engaged was to back the wagon up to a place where the same was to be unloaded, and for other persons in the employ of the defendant to unload the dirt therefrom; that while so engaged the plaintiff, through the negligence of the defendant and that of its employés intrusted by said defendant with the duty of superintendence and with authority to direct, control, and command the said plaintiff in the performance of his said duty, was directed to back the wagon to a certain place, and while doing so the said wagon and horses attached thereto fell down into a deep hole, the existence of which was unknown to the plaintiff

and well known to defendant, and the said wagon was overturned and the horses thrown, and the plaintiff was dragged and thrown, and was caught under the said wagon and horses, and suffered and received a serious injury; that said accident happened through the negligence of the defendant and that of its employés intrusted by it with the duty of superintendence and with authority to direct, control, and command the plaintiff in the performance of his duties in the following respects: (a) In failing to properly and adequately instruct the plaintiff and warn him of the danger in connection with said work; (b) in failing to inform the plaintiff of the existence of said hole; (c) in failing to properly and adequately superintend the work of unloading the said wagon; (d) in directing the plaintiff to back the said wagon to the place where the said hole was and into said hole; (e) in failing to provide the plaintiff with a safe place in which to work; (f) in failing to provide a competent superintendent to supervise and control the doing of said work. The complaint then alleges the serving a notice under the Employers' Liability Act (Consol. Laws, c. 31, §§ 200–204), and demands judgment.

The answer denies all of the material allegations of the complaint, with the exception of the allegation that the defendant is a domestic corporation, and that it was engaged in the work of grading and paving a certain street in the city of Albany known as Delaware avenue, and that a notice was served, but denies that such notice was "made or served in compliance with any law or statute."

The facts as they appeared upon the trial showed that the defendant hired the team and wagon in question from one Gates, of Rensselaer, who, under the terms of the hiring, furnished the driver for the team, and the plaintiff was the driver furnished for such team. There is no dispute that the plaintiff was hired and paid by Gates. The learned trial court charged the jury:

"The defendant has claimed that the plaintiff was not in its employ. The plaintiff was in the employ of a man by the name of Gates. He was there with his team, using Gates' wagon. The Gates team and wagon were rented by the defendant. Of course, the defendant renting the wagon and team of Gates, there came along with it the driver of the team, who was a man in the regular employ of Gates; so the defendant hired the team, wagon, and driver. In that respect, and because of that, the plaintiff was not on the pay roll of the defendant, and it has been said that the defendant could not discharge the plaintiff."

The court then suggested that the defendant could dispense with the services of the team and equipment, if not satisfied with the driver, and then left it to the jury to determine whether the driver was in the employ of the defendant, within the meaning of the Employers' Liability Act. No rule is laid down by which the jury are to determine what constitutes an employé under the act. The jury is simply told that they must determine the question as one of fact.

Counsel for the defendant excepted to that portion of—

"your honor's charge where you make a distinction between the relation of master and servant, and the employer and employé, and I ask your honor to charge, if the jury find the relation of master and servant existing between plaintiff and Gates, there can be no recovery against the defendant."

The court refused this charge, and defendant took an exception. The court was then asked to charge that:

"If the jury find that the plaintiff was in the employ of Gates, there can be no recovery against the defendant."

To this the court responded:

"I said distinctly to the jury that I understood plaintiff was in the employ of Gates. Gates paid him. He was a teamster hired by Gates, and the defendant renting the team, horses, and driver. It is a question for you to say whether Miller, doing the work, was then bearing such a relation to this defendant that he might be considered in that respect an employé of the defendant."

Counsel replied:

"I ask your honor to charge in that specific language, irrespective of the question of payment, and take an exception to your modification. I further ask you to charge that before a verdict can be rendered for the plaintiff the jury must find by a fair preponderance of evidence that the defendant was negligent, although I think you have already charged that."

I am of opinion that the defendant was entitled to this charge. The complaint somewhat equivocally alleged that the plaintiff was in the employ of the defendant in this particular work and at the particular time mentioned. The defendant denied this allegation, and the plaintiff was bound to establish the facts upon which such employment could be predicated as a matter of law. If the jury should find as a matter of fact that the plaintiff was in the employ of Gates at this particular time and place, it is obvious that the plaintiff would have failed to establish the employment alleged in his complaint; and if he was not in the employ of the defendant, then he had no standing in an action based upon the Employers' Liability Act. His right to an action under the Employers' Liability Act depended upon the fact of his being an employé of the defendant.

The defendant may have owed the plaintiff some common-law duty, notwithstanding the fact that he was in the employ of Gates; but in order to get any rights under the statute he must show the relation of employer and employé, and this involves the idea of a contractual relation between the parties. McCluskey v. Cromwell, 11 N. Y. 593, 599. In the case cited, which involved the question of the right of the employés of a subcontractor to share in the protection of a bond given to secure the payment of the wages of the employés of the contractor, the court say:

"The referee has found that the plaintiff and the other laborers, to whose claims the plaintiff has succeeded by assignment, were employed by Shippey, and consequently that they were not employed by Cromwell. Unless, therefore, the word 'employment' means one thing in the judgment of the referee, and another in the undertaking of the parties, the laborers were not employed by Cromwell within the intent of the bond. It is not the labor performed upon the work alone which gives the laborer rights under the bond, but it is labor done in pursuance of an employment by Cromwell. To employ is 'to engage in one's service; to use as an agent or substitute in transacting business; to commission and intrust with the management of one's affairs;' and, when used in respect to a servant or hired laborer, is equivalent to hiring, which implies a request and a contract for a compensation, and has but this one meaning when used in the ordinary affairs and business of life. By laborers employed by Cromwell, mentioned in the condition of the bond, are in-

tended those hired by him, working at his request, and under an agreement on his part to compensate them for their services; and employment by Shippey, as found by the referee, in this sense excludes the idea of employment by Cromwell."

The case above cited is a leading authority upon the question of construction, and the court say that:

In "the construction, both of statutes and contracts, the intent of the framers and parties is to be sought first of all, in the words and language employed, and if the words are free from ambiguity and doubt, and express plainly, clearly, and distinctly the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation. It is not allowable to interpret what has no need of interpretation, and, when the words have a definite and precise meaning, to go elsewhere in search of conjecture in order to restrict or extend the meaning." Tompkins v. Hunter, 149 N. Y. 117, 123, 43 N. E. 532.

The same principle is involved in the rule that words having a precise, well-settled meaning in the jurisprudence of a country have the same sense in its statutes, unless a different meaning is plainly intended (Perkins v. Smith, 116 N. Y. 441, 23 N. E. 21); and the suggestion that we may permit a jury to determine that a man who is the employé of one man may be the employé of another at the same moment, for the purpose of bringing him within the provisions of a statute in derogation of common law, cannot have my sanction, in the absence of controlling authority.

The Employers' Liability Act was enacted for the purpose of enlarging the liability of employers. It is entitled "An act to extend and regulate the liability of employers to make compensation for personal injuries suffered by employés," and it had relation to those and to those only who occupied the legal relation of employer and employé, as those words were understood and had been judicially construed by our courts. It created a new cause of action for employés (Rosin v. Lidgerwood Manufacturing Co., 89 App. Div. 245, 249, 86 N. Y. Supp. 49, approved in Gmaehle v. Rosenberg, 178 N. Y. 147, 70 N. E. 411), and we have no power or authority to extend the provisions of that act to any one who does not occupy the contractual relation of an employé.

In the case now under consideration it was conceded that the plaintiff was employed by Gates, that he was paid his wages by him, and that the defendant had no power to discharge him; but the jury was told that it might find that he was at the same time the employé of the defendant. That is, the jury were told in substance that they could create, after the accident, a relation which did not exist at the time of such accident; that they could do the impossible. This right has been denied to parties to contracts, but the new doctrine is that the jury may find a contractual relation to exist where it did not; where the parties had never consented to such a relation.

"Parties," say the court in Sternaman v. Metropolitan Life Ins. Co., 170 N. Y. 13, 19, 62 N. E. 763, 764, 57 L. R. A. 318, 88 Am. St. Rep. 625, "cannot make a binding contract in violation of law or of public policy. They cannot in the same instrument agree that a thing exists and that it does not exist, or provide that one is the agent of the other and at the same time and with reference to the same subject that there is no relation of agency between them. They cannot bind themselves by agreeing that a loan, in fact void for usury,

is not usurious, or that a copartnership, which actually exists between them, does not exist. They cannot by agreement change the laws of nature, or of logic, or create relations, physical, legal, or moral, which cannot be created. In other words, they cannot accomplish the impossible by contract."

But we are asked to hold that a jury may, out of facts which clearly show that a man is an employé of Gates, make him out the employé of the defendant in this action at the same time and in connection with the same transaction, and I am not willing to do this. I am not willing to say that the defendant can, after the accident, be forced to accept the contractual relation of an employer, for the purpose of enlarging the rights of one whom he never voluntarily entered into such a contract with, and it seems to me that the cases of Vasligato v. Yellow Pine Co., 158 App. Div. 551, 143 N. Y. Supp. 817, and Hanatsek v. Wilson, 161 App. Div. 634, 146 N. Y. Supp. 1016, are conclusive upon the question of the relation of the parties to this action. Both these cases recognize that the plaintiff must be in contractual relations with the defendant in order to be an employé or servant, and I think they are controlling here.

It seems plain to me that the allegations of negligence are not such as to warrant a recovery under the Employers' Liability Act in any event. The most of the specified claims are mere common-law elements, and all of them are predicated upon the theory that a master must follow a common laborer around at all times and guard him against dangers which are open and obvious to every one, and which are incident to the very work which is undertaken. The plaintiff, with Gates' team, was employed in hauling dirt to fill up the side of a highway for the purpose of widening the traveled way, preparatory to paving. The "hole" which he alleges was merely the difference between the height of the highway and the surrounding territory, and the accident happened because he backed his team off of the compact earth which was being filled in. The common-law obligation of the defendant to furnish a reasonably safe place in which to perform the work was fulfilled in providing the highway, which was undergoing a permanent improvement, the condition of which was undergoing constant change by the very work in which the plaintiff was engaged, and the suggestion that the defendant was called upon to furnish a superintendent to look after the dumping of dirt in making this fill is absurd.

However, it is not necessary to deal with this phase of the case. The error of the learned trial court in its charge to the jury is so obvious that this dissent may well rest upon that single proposition.

The judgment and order appealed from should be reversed.