court also erred in excluding the deposition of the defendant's son Herbert Salinger as to the circumstances attending the receipt of the furs as evidence tending to negative the claim that defendant, with knowledge of the facts, had ratified the act of her son George in purchasing the furs.

· Judgment reversed, and new trial ordered, with costs to appellant to abide the event. · All concur.

---

SMITH v. PRICE et al.   (No. 86/70.)

(Supreme Court, Appellate Division, Third Department.   May 5, 1915.)

1. MASTER AND SERVANT ⬅⬅87½, New, vol. 16 Key-No. Series—WORKMEN'S COMPENSATION LAW—CONSTRUCTION—"EMPLOYÉ"—"INJURY"—"PERSONAL INJURY."

Under Workmen's Compensation Law (Consol. Laws, c. 67) § 2, providing that compensation shall be payable for injuries sustained by employés engaged in the hazardous employments therein specified, group 41, specifying as a hazardous employment the operation, otherwise than on tracks, of trucks or other vehicles drawn by horses, section 3, subd. 4, defining "employé" as a person engaged in a hazardous employment in the service of an employer conducting it upon the premises or in the course of his employment away from his employer's plant, subdivision 7, defining "injury" and "personal injury" as meaning only such accidental injuries as may naturally and immediately result from the employment, a teamster operating a truck, who, after returning to the stable, was putting his horse in the stall in the course of his employment, when the horse squeezed him against the side of the stall, causing his death, was within the benefits of the law, as such benefits are not limited to the actual time that the horse is moving or that the employé is upon the truck.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employé; Injury; Personal Injury.]

2. MASTER AND SERVANT ⬅⬅87½, New, vol. 16 Key-No. Series—WORKMEN'S COMPENSATION LAW—CONSTRUCTION—"HAZARDOUS EMPLOYMENT."

Workmen's Compensation Law, § 2, group 41, specifying as a hazardous employment thereby covered the operation, otherwise than on tracks, on streets, highways, or elsewhere, of trucks, cars, etc., when read with group 1, covering the operation of railways, street railways, and inclined railways, and section 3, subd. 1, defining a "hazardous employment" as a work or occupation described in section 2, applies to persons operating trucks or other vehicles or appliances mentioned otherwise than upon tracks; the words "on streets, highways, or elsewhere" being evidently surplusage and having evidently been used to make certain that the group covered all cars and trucks except those covered by group 1.

Appeal from Workmen's Compensation Commission.

In the matter of the claim of Lillian F. Smith against Charles H. Price and another for compensation to herself and children under the Workmen's Compensation Law for the death of Erwin D. Smith. From a determination of the State Workmen's Compensation Commission awarding compensation for the death of said Erwin D. Smith, the employer and the insurance carrier appeal.   Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

⬅⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Nadal, Jenes & Mowton, of New York City (Edward P. Mowton, of New York City, of counsel), for appellants.

E. C. Aiken, of Albany, for the Attorney General.

Jeremiah F. Connor, of New York City, for Workmen's Compensation Commission.

JOHN M. KELLOGG, J.   [1] The appellant Price was carrying on the "business of carting and truck work" at Cortland, N. Y.   The intestate, his teamster, had operated the truck during the day, and about 5 o'clock in the afternoon returned to the stable and, in the course of his employment, was putting his horse in the stall when it jumped, squeezed him against the side of the stall, causing his death. The commission determined that the employé met his death in the course of his employment of operating the truck, within the meaning of section 2, group 41, of the State Workmen's Compensation Law, which provides:

"Sec. 2. Application.   Compensation provided for in this chapter shall be payable for injuries sustained or death incurred by employees engaged in the following hazardous employments: * * * Group 41.   The operation, otherwise than on tracks, on streets, highways, or elsewhere of cars, trucks, wagons or other vehicles, and rollers and engines, propelled by steam, gas, gasoline, electric, mechanical or other power or drawn by horses or mules."

The appellants contend that the intestate, while caring for his horse at the close of the day according to his employment, was not fairly within group 41; in other words, that he was not operating a truck or wagon drawn by horses at the time he received his injury.

This is too narrow a construction of the statute.   The benefit of the act is not limited to the actual time that the horse is moving or that the employé is upon the truck.   It covers every injury or death received in the course of the employment.   The loading and unloading of his truck, hitching and unhitching his horse to the truck, feeding and caring for his horse, are a part of the employment of operating the truck, and are fairly within the provisions of the law.

Section 3 of the act gives certain definitions which go far in enabling us to properly apply it.   By subdivision 4:

" 'Employee' means a person who is engaged in a hazardous employment in the service of an employer carrying on or conducting the same upon the premises or at the plant, or in the course of his employment away from the plant of his employer," etc.

By subdivision 7:

" 'Injury' and 'personal injury' mean only accidental injuries arising out of and in the course of employment and such disease and infection as may naturally and unavoidably result therefrom."

By section 95 the rates of premium in the state fund are based upon the pay roll and the number of employés.   The state fund as an insurer, or the insurance company which takes its place, has received pay for the risks of the employé during all the time when he is engaged in the service of the master and for which he is paid unless it appears that he was performing some extra service outside of his employment.

The employé cannot receive full protection, and the employer cannot have the protection he has paid for, unless the act is given a broad and liberal construction so as to carry out the evident legislative intent.

In the Matter of the Claim of Thomas McQueeney v. Sutphen & Hyer (Claim No. 29,703) 153 N. Y. Supp. 554, decided at this term of court, we have considered the protection which the state has assumed to furnish both to the employer and the employé. No good reason is suggested why the benefit of the act should be confined to the time when the workman is actually operating his truck. Such a construction is opposed to the provision defining the employé which recognizes his employment as continuing after he has left the plant and while he continues in the course of his employment.

[2] Group 41, when read with subdivision 1 of section 3 of the act, was evidently intended to apply to persons operating trucks or the other vehicles or appliances mentioned in the act, for profit, when operated otherwise than upon tracks. The provision is plain when we read group 1, which includes the operation of all kind of cars upon railways and inclined railways. The provisions of group 1 fairly cover all vehicles operated for profit upon tracks, and it is a fair inference that group 41 was intended to cover all other vehicles operated for profit. The clause "otherwise than on tracks" was inserted in group 41 to distinguish that group clearly from group 1. The words "on streets, highways or elsewhere," are evidently surplusage. While the expression is perhaps unfortunate, it was evidently intended to make certain that the group covered all cars and trucks except those operated upon tracks covered by group 1.

In North Carolina R. Co. v. Zachary, 232 U. S. 248, 34 Sup. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159, the intestate, an engineer, after inspecting, oiling, firing, and preparing his engine for starting on a trip from Selma to Spencer, N. C., left it to go to his boarding house, a short distance away. In the train prepared for him were interstate cars: the engine had not been attached to the train. While crossing the track en route to his boarding house, he was run over and killed, and his estate maintained an action under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1913, §§ 8657–8665]) for his death. The fact that he had left his engine and was going to his boarding house when he met his death was deemed immaterial, the court saying:

"There is nothing to indicate that this brief visit to the boarding house was at all out of the ordinary, or was inconsistent with his duty to his employer. It seems to us clear that the man was still 'on duty,' and employed in commerce, notwithstanding his temporary absence from the locomotive engine."

There is not much difficulty therefore in saying that the claimant was acting in the course of his employment when he met his death. It is immaterial that at the time of his injury he was not moving the truck; it was as much his duty to care for the horse as it was to drive the horse when it was attached to the truck. He received the injury in the course of his employment.

The award should be affirmed. All concur.