DALE v. SAUNDERS BROS. et al.

(Supreme Court, Appellate Division, Third Department.   March 8, 1916.)

1. MASTER AND SERVANT ⬡═373—WORKMEN'S COMPENSATION ACT—NATURE OF EMPLOYMENT—"OPERATION."

The "operation" of a vehicle drawn by horses, referred to in Workmen's Compensation Law (Consol. Laws, c. 67) § 2, group 41, as a hazardous employment is not confined merely to the moving vehicle, but relates to anything incident to the employment, and includes the loading of a wagon with sand in the course of the employment.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. ⬡═373.

For other definitions, see Words and Phrases, First and Second Series, Operate.]

2. MASTER AND SERVANT ⬡═373—WORKMEN'S COMPENSATION ACT—"COURSE OF EMPLOYMENT."

Where a brickmaker requires his teamster to use his team temporarily in carting for the owner of a sand pit, an injury occurring in loading the wagon at the same pit is in the "course of employment" by the brickmaker, within the Workmen's Compensation Law.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. ⬡═373.

For other definitions, see Words and Phrases, First and Second Series, Course of Employment.]

3. MASTER AND SERVANT ⬡═373—WORKMEN'S COMPENSATION ACT—NATURE OF EMPLOYMENT—"HAZARDOUS EMPLOYMENT."

The driving of a team hauling sand from a sand pit was a hazardous employment," within Workmen's Compensation Act, § 2, group 19, naming sand quarries, and group 41, naming operation of vehicles drawn by horses, as hazardous occupations.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. ⬡═373.]

4. MASTER AND SERVANT ⬡═361—WORKMEN'S COMPENSATION ACT—SCOPE OF EMPLOYMENT.

Where a teamster employed by a brickmaker was required to haul sand for the owner of a sand pit, the fact that the owner of the sand pit is liable for injuries to the teamster does not absolve the brickmaker, his general employer, from liability under the Workmen's Compensation Law.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. ⬡═361.]

Woodward and Howard, JJ., dissenting.

Appeal from Workmen's Compensation Commission.

Claim under the Workmen's Compensation Law by Rose Dale, for herself and children, for compensation for the death of Frank Dale, against Saunders Bros., employers, and their insurer. From an award by the Workmen's Compensation Commission, the employers and insurer appeal. Affirmed.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Frederick T. Pierson, of Rochester, for appellants.

Egburt E. Woodbury, Atty. Gen. (Harold J. Hinman, Deputy Atty. Gen., of counsel), for respondent.

JOHN M. KELLOGG, P. J.   Saunders Bros., appellants, were makers of brick, and Dale was one of their teamsters.   The sworn report

made by them to the Commission states concisely the manner in which he met his death:

"I sent him for a load of sand.  While there it fell—the sand bank fell— and he died the next day."

[1] The Saunders Bros. were drawing this sand for profit, and Dale was their teamster.  The fact that his team was not moving when he was injured, and that he was loading sand in the wagon in order to draw the load to Auburn, does not deprive him of the benefit of this law.  He was operating the wagon just as much as if he had been driving on the road.  The operation of a wagon or truck, referred to in group 41 of section 2 of the Workmen's Compensation Law, is not confined merely to the moving vehicle, but relates to anything incident to the employment, such as caring for the horse in the stable after the day's work is done, as we held in the Matter of Smith v. Price, 168 App. Div. 421, 153 N. Y. Supp. 221.  The loading and unloading of the wagon, the necessary care and attention to the wagon and to the horses, any act which falls within his duty as a teamster, is within the protection of the Law.

[2] If a brickmaker requires his teamster to use his team temporarily in carting for a neighbor, the employé does not thereby lose the protection of this law.  Such service may be treated as an incident to his general employment.  He is not to determine as to the business of his employer, but must do as he is told, and the employer is responsible for the results.

[3] That the injury was one arising out of and in the course of his employment by said appellant is apparent.  The award, therefore, is clearly within the provisions of the Workmen's Compensation Law. The employment was a hazardous one, within group 19, and also within group 41.

[4] It is urged, however, that in the case of Catherine Gimber v. T. B. Kane Co., 2 State Department Reports, Official, 475, affirmed by this court without opinion, 155 N. Y. Supp. 1109, upon substantially similar facts, an award was made against the proprietor of the sand pit, and it is claimed that, if we were right there, the Commission is wrong here.  In my judgment, either the proprietor of the sand pit, the special employer, or the general employer, the brickmaker, is liable in this case.  As has frequently been said, the Workmen's Compensation Law is a new departure, in giving a remedy to a workman for an injury received in a hazardous employment.  The loss from such injury is placed, without regard to fault, upon the employment, to the relief of the employé.  It is considered a part of the cost of the product resulting from the employment, and is thus charged upon the ultimate consumer.  In addition to this, it was fairly within the intent of the law that by making these hazardous employments liable for all injuries occurring in them, without regard to fault, the employer would exercise the utmost care to prevent accidents.  The act provides a summary remedy, disregarding the ordinary procedure and rules of evidence, and prescribes radical presumptions in favor of the claimant.

The law of negligence, the rules relating to master and servant, the rule as to the inability to serve two masters, are of but little value here. The statute itself has removed these questions to quite an extent from our consideration. It names the hazardous employments; it defines an employé as a person engaged in such employment in the service of the employer, and defines the employer as a person employing workmen in such employment. When the statute defines the employer as one employing men in a hazardous employment, it does not necessarily mean that he is hiring a servant by a personal contract with him; but it means that he is using or engaging the man in a hazardous work. It is not a question of hiring, or of master and servant, but of using and putting the man in the hazardous employment which the act has in view. The name of the act "Workmen's Compensation Law" indicates that it is not to be limited to cases where the actual relation of master and servant exists, but to workmen and those employing or using them in the manner stated. When it appears that a person is carrying on such hazardous employment for profit, and that a person in his service or whom he is employing or using therein receives an injury, compensation follows.

Clearly the proprietor of the sand pit must get his sand to market, and must use men and teams for that purpose, and, when he arranged from time to time with Saunders Bros. that they were to furnish him with teams to draw sand, at the rate of $4.50 per day figured at four loads of sand as a day's work, with the right to draw the four loads in one or on different days, it is easy to say that the driver, within the meaning of the act, was engaged in the hazardous employment of "sand pits," and that the proprietor was employing or using him in the hazardous business which caused his death.

He was there for two reasons: (1) Because he was in the employ of the Saunders Bros., as their driver, and was loading the sand in their wagon, as his duty as their driver, required him to do. (2) The proprietor of the sand pit employed the use of the teams and driver to enter into the sand pit and draw the sand therefrom. The driver was therefore engaged in two hazardous employments, the ordinary business of a teamster, and working in and about a sand pit. The proprietor of the sand pit had two regular helpers there, who assisted the teamster in loading the wagon. It is difficult to see upon what theory the law could make the owner of the pit liable to those men, and not to the teamster, if all were hurt while working side by side in loading the wagon.

If the driver was accidentally injured while drawing the sand upon the highway, by falling from the wagon or in any way not connected with the sand itself, it cannot be claimed that the special employer, the sand pit proprietor, would be liable. The same may be true as to an ordinary accident happening upon the sand pit premises, but not connected with the hazards of the pit itself. But when the accident is caused, as in the Gimber Case and in this case, by the sand in the pit falling upon the person, where the proprietor had put him to work, the liability may fall upon the proprietor of the pit. As we have said, the law of master and servant does not necessarily control

here. The question is: Was the employé engaged in a hazardous employment in the service of the defendant, or of the sand pit proprietor, or of both?

The fact that the owner of the sand pit might be liable under this law does not absolve the general employer. Dale was required to drive his team where the Saunders Bros. directed, and by requiring him to go into the sand pit and subjecting him to the increased danger there they cannot relieve themselves from the ordinary duties and liabilities to their teamster. The fact that under the provisions of this law the employment might fall within two or more different groups, and thereby two or more different persons might be liable to make the compensation, does not prejudice the injured employé or his family. It furnishes an additional guaranty that payment will be made. The general employer, where the injury occurs within the lines of the general employment, is liable, and that liability is not destroyed by the fact that the special employer may also be liable, thus giving the employé a choice of remedies with but one compensation. I therefore favor affirmance.

Award affirmed. All concur, except WOODWARD, J., dissenting, in opinion in which HOWARD, J., concurs.

WOODWARD, J. (dissenting). Saunders Bros., the alleged employers, are engaged as manufacturers of brick at Fleming, near Auburn. They employ a number of teamsters to drive their wagons, and from time to time Saunders Bros. have furnished these teams, with drivers, to one Patrick Walsh, who conducted a sand bank near by, for the purpose of delivering sand to patrons at Auburn. Frank Dale was one of the teamsters so employed, and on the 10th day of October, 1914, was sent by Saunders Bros. to Patrick Walsh for the purpose of performing this delivery service for the said Walsh. The team and wagon were placed by the servants and employés of Walsh, and, while Dale was engaged in shoveling sand into the wagon, the sand from the bank caved in, falling upon Dale, producing injuries which resulted in his death the following day. The State Workmen's Compensation Commission has awarded damages to the widow and children against Saunders Bros. and their insurance carrier, and these appeal to this court, upon the ground that Dale was, at the time of the accident, in the special employ of Walsh, who became liable for the injuries. In this contention the appellants are clearly in harmony with this court in the Matter of the Claim of Catherine Gimber v. T. P. Kane Company, 155 N. Y. Supp. 1109, decided at the November term, and unless we were in error in that case the determination in the present case cannot stand.

No distinction can be made in the facts, so far as we are able to discover; in both cases the driver was employed generally by one party, and was by each party hired out, with a wagon and team, to another, and while so employed was injured in the performance of the duties of the particular occupation. We there held, upon the authority of Miller v. North Hudson Contracting Company, 166 App. Div. 348, 152 N. Y. Supp. 22, that the employé became the servant of

the corporation conducting the particular work, and that such corporation, or its insurance carrier, was liable for the damages, affirming the award of the Commission. Just how the Commission, upon practically the identical state of facts, can now be permitted to make an award against the original employer we are unable to understand. The theory of the Workmen's Compensation Law, as we understand it, is that the particular industry in which the accident occurs is to bear the loss; it is to become a charge upon the production of such enterprise (Ives v. South Buffalo Ry. Co., 201 N. Y. 271, 286, 94 N. E. 431, 34 L. R. A. [N. S.] 162, Ann. Cas. 1912B, 156), and if Dale had been injured while delivering brick for the initial employer, a manufacturer of brick, this would have come within the theory of the law. But nothing of the kind occurred; the accident happened to Dale while he was engaged in the work of operating a sand bank. He was generally employed as a teamster, but he was specially engaged at the time of the accident in shoveling sand from a sand bank into a wagon in company with others. He was doing the work of Patrick Walsh, whose business was that of an operator of a sand bank, under group 19 of section 2 of the Workmen's Compensation Law, and it was this industry which should, under the theory of the law, be charged with the damages. The statute provides (section 2) that the "compensation provided in this chapter shall be payable for injuries sustained or death incurred by employés engaged in the following hazardous employments," and (section 3) that "'employé' means a person who is engaged in a hazardous employment in the service of an employer carrying on or conducting the same upon the premises or at the plant, or in the course of his employment away from the plant of his employer," and (section 10) that every employer shall provide compensation "for the disability or death of his employé resulting from an accidental personal injury sustained by the employé arising out of and in the course of his employment."

Personal injury is defined by the statute (subdivision 7, § 3) to "mean only accidental injuries arising out of and in the course of employment," and employment is defined as including "employment only in a trade, business or occupation carried on by the employer for pecuniary gain," and an employer is one "employing workmen in hazardous employments." Saunders Bros. were, it is true, engaged in one of the hazardous employments; but Dale was not injured because of anything arising out of and in the course of his general employment as a teamster in operating a brickmaking plant. He was injured to his death while performing a special employment in a sand bank. He was not engaged in the "operation, otherwise than on tracks, on streets, highways, or elsewhere of cars, trucks, wagons or other vehicles, and rollers and engines, propelled by steam, gas, gasoline, electric, mechanical or other power, or drawn by horses or mules" (group 41), but was performing the work of a shoveler of sand, and this employment was being carried on by Walsh for pecuniary gain. He was the employer who was engaged in the particular hazardous occupation in which Dale met his death, and an employé is, as we have seen, "a person who is engaged in a hazardous employment in the service of an

employer carrying on or conducting the same (employment) upon the premises or at the plant, or in the course of his employment away from the plant of his employer." Saunders Bros. had no occasion to use Dale in shoveling sand. They were not engaged in this hazardous occupation. They were manufacturers of brick, and, having more teams and men than they needed to use in their own business at this particular time, they temporarily transferred their team and driver to the service of Walsh, and it was while this operation of a sand bank —the hazardous occupation of Walsh—was in progress that the accident happened.

Clearly, if the spirit of the act is to have effect, and the accidents of a given industry are to become a charge upon the product of such industry, and be absorbed by the purchasers of that product (Ives Case, supra), then the injuries which Dale sustained become a proper charge, not upon Saunders Bros., but upon Walsh, whose industry was being developed through the efforts of Dale. A long line of cases in law actions sustain the theory that the employé of a general employer may become the employé of a special employer, and we believe that the doctrine is peculiarly applicable to the case presented upon this appeal. At any rate, this court is committed to the doctrine, and this calls for a reversal of the award.

The award of the Commission should be reversed and set aside.