### SCHMEDES v. DEFFAA (two cases).

(Supreme Court, Appellate Division, First Department. December 20, 1912.)

MASTER AND SERVANT (§ 301\*)—LIABILITY FOR SERVANT'S TORTS—RELATION OF PARTIES.

    Defendant, a livery stable keeper, received an order from an undertaker to furnish a number of carriages, horses, and drivers to attend funerals, and, not having sufficient carriages of his own, applied for an additional carriage to another livery stable keeper, who sent one of his drivers, with orders to report to defendant and take his orders. Defend-

ant sent the driver to the undertaker, who directed him to go to the house where the funeral was to be an to proceed with the funeral party to the cemetery. Except as the driver was directed to go where defendant ordered, defendant had no control over him, and no authority to employ or discharge him. *Held*, that the driver was not defendant's servant, and hence defendant was not liable for his negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1210–1216; Dec. Dig. § 301.*]

Miller and Laughlin, JJ., dissenting.

Appeal from Trial Term, New York County.

Two actions by Rosie Schmedes and by Henry R. Schmedes, respectively, against Louis P. Deffaa. From judgments dismissing the complaints at the trial, plaintiffs appeal. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILER, JJ.

Harry A. Gordon, of New York City, for appellants.
William L. Kiefer, of New York City, for respondent

SCOTT, J. The plaintiff sues for damages for personal injuries resulting, as she alleges, from the negligence of the driver of a carriage. The only question to be considered upon this appeal is whether such driver was the servant of defendant, in such a sense as to render the defendant liable for the driver's negligence under the doctrine of respondeat superior.

The defendant is the keeper of a livery stable. On April 25, 1909, he had received an order from one August Herlich, an undertaker, to furnish a number of carriages, horses, and drivers to attend funerals. Defendant had not sufficient carriages of his own to fill the order, and he thereupon applied to another livery stable keeper, named Naughton, for an additional carriage. Naughton sent one of his drivers, with a carriage and horses, with orders to report to defendant and take his orders. When the driver reported, defendant sent him to Herlich, the undertaker, who in turn directed him to go to the house where the funeral was to be, and then to proceed with the funeral party to the cemetery. It was while the carriage was on one of the East River bridges on the way to the cemetery that the accident occurred. It was stipulated at the trial that the horses, carriage, and driver came from Naughton, and the evidence showed that all defendant had to do with them was to hire them from Naughton and immediately let them to Herlich. Except as the driver had been directed to go where defendant ordered, the latter had no control over the driver, and no authority to employ or discharge him.

We have recently had occasion to consider the application of the rule of respondeat superior with reference to accidents resulting from the negligent operator of hired vehicles. Weaver v. Jackson, 138 N. Y. Supp. 609. In that case we took occasion to quote from Maxmillian v. Mayor, etc., 62 N. Y. 160, 20 Am. Rep. 468, the following:

"This rule of respondeat superior is based upon the right which the employer has to select his servants, to discharge them, if not competent, or skill-

ful, or well-behaved, and to direct and control them while in his employ. The rule has no application to a case where this power does not exist."

And also the following from the Supreme Court of the United States in Standard Oil Company v. Anderson, 212 U. S. 215, 29 Sup. Ct. 252, 53 L. Ed. 480:

"The simplest case, and that which was earliest decided, was where horses and a driver were furnished by a liveryman. In such cases the hirer, although he suggests the course of the journey and in a certain sense directs it, will not become the master of the driver and responsible for his negligence, unless he specifically directs or brings about the negligent act."

Tested by these rules, it is quite apparent that the defendant was not the master of the driver and responsible for his negligence in the management of the vehicle.

The cases of Howard v. Ludwig, 57 App. Div. 94, 67 N. Y. Supp. 1095, affirmed 171 N. Y. 507, 64 N. E. 172. and Baldwin v. Abraham, 57 App. Div. 67, 67 N. Y. Supp. 1079, affirmed 171 N. Y. 677, 64 N. E. 1118, are quite different in their facts from the case presented here. It is true that in each of these cases the defendants had hired horses, wagons, and drivers; but they had used them continuously and exclusively in their business for considerable periods of time, and had exercised such control and direction over them as to raise a question of fact whether they had not assumed ad hoc the relation of master to the drivers. In Gorney v. City of New York, 102 App. Div. 259, 92 N. Y. Supp. 451, the negligent act charged to the driver of a hired ash cart was that he left his horse standing unhitched in a public street. This act was the result of a requirement of the hirer that he should go into a building to make a report, and for this the employer was held to be liable.

Kellogg v. Church Charity Foundation, 203 N. Y. 191, 96 N. E. 406, 38 L. R. A. (N. S.) 481, might be authority for plaintiff, if the action were against Naughton, the owner of the horses and carriage, and the master of the driver, but is not an authority as against the present defendant, who acted merely as a middleman in the transaction, and who was neither the master of the driver, nor the one who directed his movements after he had reported to the undertaker.

Judgment affirmed, with costs.

INGRAHAM, P. J., and CLARKE, J., concur.

MILLER, J. (dissenting). These cases present the troublesome question whether a servant in the general employment of one person is, with respect to a particular transaction, the servant of another. Though there can be no difference of opinion on the fundamental principles involved, the question has arisen under such a variety of circumstances as to make each case depend upon its own facts. I agree with Mr. Justice SCOTT that the driver, whose negligence caused the accident in this case, was not the servant of the undertaker. Kellogg v. Church Charity Foundation, 203 N. Y. 191, 96 N. E. 406, 38 L. R. A. (N. S.) 481, is plainly an authority for that proposition. The hiring by the undertaker was precisely like that of the ordinary hiring

of a livery turnout, referred to by Mr. Justice Moody, in Standard Oil Company v. Anderson, 212 U. S. 215, 29 Sup. Ct. 252, 53 L. Ed. 480, as the simplest and one of the earliest decided cases. If, then, instead of being borrowed for the occasion, the driver had been one of the defendant's regular employés, there could be no doubt of the latter's liability.

The driver was in the general employment of James Naughton's Sons, who, at the defendant's request, had sent him to the defendant's stable with instruction to take orders from the latter. The person thus sending him testified:

"I didn't know where he was going. I simply sent him over to Deffaa, because Deffaa requested a coach and horses and a driver."

Plainly, the general employer did not engage to do any particular work for the defendant. The latter was at liberty to use the driver generally in his business, to send him to the undertaker or to some other customer, and, upon his return, to send him to still another. The case appears to me, therefore, to be the familiar one of a servant in the general employment of one person, temporarily loaned to another to do the latter's work, and it is unnecessary at this day to cite authority in support of the proposition that, in such case, the servant becomes pro hac vice the servant of the borrower. The rule respondeat superior applies with the same force to a borrowed as to a regular employé.

As between the undertaker and the defendant, the latter was an independent contractor, and the driver, though subject to the former's instructions as to where he should go, was doing the latter's work, and was for the time being under his control, precisely as though in his general employment. As between the general employer and the defendant, the driver was merely loaned by the former to the latter.

The reasoning of the court in the two cases, cited supra, supports the view that the defendant was liable for the negligence of the driver upon the application of the rule respondeat superior. In the Standard Oil Company Case, Mr. Justice Moody referred to the accepted reason for the rule as given by Chief Justice Shaw in the oft-quoted case of Farwell v. Boston & Worcester Railroad Corporation, 4 Metc. (Mass.) 49, 38 Am. Dec. 339; i. e., that the master is held liable for the wrongs of his servant because the latter is conducting the master's affairs, a reason which, I think, is sometimes overlooked in determining the master's liability, both to servants and to third parties. Every man should be held answerable for the conduct of his own business, and for the agencies employed by him in this business, whether animate or inanimate; and that reason appears to me to be the only satisfactory one for holding one man answerable for the torts—the unauthorized acts—of another. In discussing the proposition that the true test of liability is whether the servant was doing the defendant's work, Mr. Justice Moody put the case so plainly and his language is so apposite that it will bear repetition. He said:

"It sometimes happens that one wishes a certain work to be done for his benefit, and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an

agreement with another. If that other furnishes him with men to do the work, and places them under his exclusive control in the performance of it, those men become pro hac vice the servants of him to whom they are furnished. But, on the other hand, one may prefer to enter into an agreement with another that that other, for a consideration, shall himself perform the work through servants of his own selection, retaining the direction and control of them. In the first case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work, and they are, for the time, his workmen. In the second case, he who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of it, because, though it is done for the ultimate benefit of the other, it is still, in its doing, his own work. To determine whether a given case falls within the one class or the other, we must inquire whose is the work being performed— a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work."

In the Kellogg Case, supra, Judge Willard Bartlett, referring to the opinion of Mr. Justice Moody in the Standard Oil Company Case, said:

"Where one furnishes another with men to do work for him and places them under his exclusive control in its performance, those men become pro hac vice the servants of him to whom they are furnished, and he is responsible for their negligence because the work is his work, and they are his workmen for the time being."

Applying that test, it appears to me that the defendant is liable for the driver's negligence. The driver was certainly not doing the work of his general employer, because the latter had not engaged to do that work. He was not doing the work of the undertaker, because the latter had employed the defendant as an independent contractor to do it. The work, then, was that of the defendant, done by the agencies supplied by him, and subject to his control, except in so far as the undertaker might direct the course of the journey.

For the foregoing reasons, I vote to reverse the judgment and to grant a new trial.

LAUGHLIN, J., concurs.