LUTHER GREEN, Respondent, *v.* McMULLEN, SNARE & TRIEST, INC., Appellant.

First Department, May 4, 1917.

**Master and servant** — negligence — when relation of employer and employee exists within meaning of Labor Law — liability of general contractor for negligence resulting in injury to driver of team furnished by third party — duty of contractor to see that truck and other appliances are reasonably safe — evidence.

Where a contractor hires teams and drivers from another person and places them under the exclusive control and authority of its foreman, the relation of employer and employee within the meaning of the Labor Law exists between the contractor and the drivers of the team, rendering the contractor liable for negligence resulting in injury to a driver, although he received no wages directly from the contractor.

Where trucks and drivers are employed under such circumstances, it is the duty of the contractor to see to it that the trucks are reasonably safe and that the drivers have the other appliances necessary to enable them to do the work in a reasonably safe way.

In an action by the driver of a truck against the contractor, it appeared that the plaintiff was directed by defendant's truck foreman to go to a dock and get a load of steel columns; that defendant's foreman took entire charge of loading the truck, the plaintiff having nothing whatever to do therewith; that the truck was loaded with two steel columns about thirty-five feet long and weighing about two or two and one-half tons; that the columns were not fastened in any way but laid between four rungs on the truck, one of which was loose, and that neither ropes nor chains were furnished, although it was customary to either fasten the columns to the truck by chains or to hold the rungs in place by a rope.

*Held,* on all the evidence, that a judgment in favor of the plaintiff should be affirmed.

CLARKE, P. J., and LAUGHLIN, J., dissented, with opinion.

APPEAL by the defendant, McMullen, Snare & Triest, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Bronx on the 15th day of March, 1916, upon the verdict of a jury for $6,000, and also from an order entered in said clerk's office on the same day, denying defendant's motion for a new trial made upon the minutes.

*John R. Halsey,* for the appellant.

*Sydney A. Syme,* for the respondent.

DAVIS, J.:

The action is brought under the employers' liability provisions of the Labor Law (Consol. Laws, chap. 31 [Laws of 1909, chap. 36], art. 14, as amd. by Laws of 1910, chap. 352).

The complaint alleges that on March 12, 1914, plaintiff was in the employ of the defendant, performing such work as he was ordered to do by defendant, its agents and superintendents; that on said date while driving a truck with a team of horses carrying certain steel columns which had been loaded on said truck by defendant, the columns fell from the truck and caused plaintiff to fall therefrom as a result of which he received injuries which necessitated the amputation of his foot. It is further alleged that the injuries were caused by the negligence of defendant, its superintendent, and persons in its employ intrusted with authority to direct defendant's employees in their work. The acts of negligence are alleged to be: (1) Furnishing defective ways, works and plant; (2) failure to furnish safe and proper place and means to work.

At the time of the accident the defendant was engaged in constructing a section of the new Lexington avenue subway in the city of New York. It received its steel in barges at the dock at One Hundred and Eighteenth street and East river, and hauled the steel on trucks from the dock to the section of subway it was constructing. The defendant's practice was to hire such teams, trucks and drivers as it needed for this purpose, designating the kind of truck to be used in each instance. On March 12, 1914, the defendant hired four teams, trucks and

drivers for such hauling work from Charles Farrell, who was engaged in the general trucking business.

The plaintiff Green was a driver of one of those teams, and was in the general employ of Farrell and received his wages from Farrell. For each outfit the defendant paid Farrell seven dollars a day. The conditions under which the teams and driver were thus used by the defendant are described by Farrell and by Slattery, the defendant's truck foreman. Farrell testified as follows: "I would ask Mr. Slattery * * * how many trucks he would want, and he would order them. * * * I was to just send them down there; * * * after they got down there I had nothing to do with them. * * * They [the drivers] were to go down and report to Mr. Slattery. He gave them the orders. * * * The only orders I gave them were to go down there. I never went on the job to boss the men; did not know what the teams did. Slattery told me he would give the orders." Slattery testified that he was the man who gave orders to all the truckmen and that he told them what to do; that if they did not obey his orders he would discharge the truck, the driver, team and all; that the defendant McMullen, Snare & Triest paid him for bossing the truck drivers, including the plaintiff Green, as well as the other men who were hauling this steel, and that whatever he told the men to do, they did.

The plaintiff was injured while doing the work which defendant ordered him to do.

The first question to be determined is whether, at the time of the accident, he was in the employ of the defendant within the intent of the Labor Law. Section 2 of the Labor Law (as amd. by Laws of 1913, chap. 529) defines (subd. 1) an employee as "a mechanic, workingman or laborer who works for another for hire," and (subd. 2) an employer as "the person employing any such mechanic, workingman or laborer, whether the owner, proprietor, agent, superintendent, foreman or other subordinate."

It was stated in the case of *Gombert* v. *McKay* (201 N. Y. 27, 30) that "the statute must be given a fair and reasonable meaning which will neither extend it beyond nor withdraw it from its intended effect."

It is quite obvious that the plaintiff was employed by the defendant, although he received no wages directly from it. But he did receive wages for the work he performed for the defendant, and the defendant was the source of those wages. Is it essential that he should receive his wages directly from the defendant in order to make him an employee for hire within the intent of the Labor Law? To hold that, would make the existence of the relation of employer and employee depend not upon whether the plaintiff was working for hire, but solely upon the question of who paid him the hire, a result which, we think, the Legislature never intended.

A reasonable interpretation of this law must lead to the conclusion that the plaintiff was in fact an employee for hire of the defendant, and this view is sustained by authority. (See *Miller* v. *North Hudson Contracting Company,* 166 App. Div. 348, where the court say: "Literally, of course, the defendant did not employ the plaintiff. * * * In great enterprises there are undoubtedly many instances where laborers are sup - plied to the master indirectly, as the plaintiff was here. Are all such persons outside the pale of the Labor Law? To hold this would be to open an avenue for the complete subversion of the Employers' Liability Law, now incorporated in the Labor Law. * * * By having their laborers employed and paid by a third party and sent to them through such third party, employers could thus escape all liability. Such an evasion was not contemplated by the Legislature. It cannot be tolerated by the courts.")

It has been held that in a case similar to the one at bar the special employer would be liable to third persons injured through the negligence of the driver upon the ground that the driver was the servant of the special employer. (*Schmedes* v. *Deffaa,* 214 N. Y. 675.) We are of opinion that the Labor Law has extended the liability of the master arising out of the relation created by this. form of hiring so as to protect his servant and employee against the delinquencies of the master enumerated therein.

The plaintiff being an employee of the defendant, it was the latter's duty to furnish him with proper plant and appliances for doing his work. Notwithstanding the fact that the truck,

horses and driver were all obtained from Farrell at one time, the truck was in fact furnished by the defendant, as much so as if it had hired it separately or from persons other than Farrell, or if it had bought it. It was, therefore, the duty of the defendant to see to it that the truck was reasonably safe and that the plaintiff had the other appliances necessary to enable him to do the work in a reasonably safe way. The plaintiff claimed that the truck was defective, and that the defendant furnished him with no ropes or chains to secure the steel beams while in transit.

There was evidence to show that the plaintiff was directed by defendant's truck foreman to go to the dock at the foot of East One Hundred and Eighteenth street to get a load of steel beams from a barge which was unloading; that on arriving at the dock the defendant's foreman took charge of loading the truck and gave all orders to that end. The plaintiff and other witnesses testified that the plaintiff had nothing whatever to do with the loading of the truck. Even defendant's assistant foreman in the steel gang testified that the drivers had nothing to do with the loading, but simply stood around and watched the loading, he bossing it and having entire charge of it. This truck was loaded with two steel " H " columns about thirty-five feet long and weighing about two or two and one-half tons. The beams were not fastened in any way to the truck. The truck had four rungs, two in front and two in the rear. The beams lay between these rungs. It is customary when using a truck of this kind either to fasten the beams to the truck by chains or to hold the rungs in place by a rope passing from one to the other in front and at the back. Neither ropes nor chains were furnished. When the loading was completed in this way, the plaintiff sat upon one of the beams in front and drove a short distance to the street when the jouncing of the truck caused one of the beams to fall off, throwing plaintiff from the truck in such a way that his foot was caught under the beam and so lacerated that it had to be amputated. There was also evidence showing that the forward right-hand rung was too small for its hole and that it was displaced by the jouncing of the truck, thus making it possible for the beam to fall off.

The court left it to the jury to say whether the truck, loaded

First Department, May, 1917.          [Vol. 177,

in this manner by the defendant's foreman, was a reasonably safe appliance and whether the defects, if any, were such as were discoverable by the exercise of ordinary care on the part of defendant's foreman in charge of the loading. The jury resolved these questions in favor of the plaintiff as well as the issue of contributory negligence.

The verdict was not excessive and we see no reason for disturbing the judgment.

The judgment and order appealed from should be affirmed, with costs.

DOWLING and SHEARN, JJ., concurred; CLARKE, P. J., and LAUGHLIN, J., dissented.

CLARKE, P. J. (dissenting):

I am unable to concur in the opinion of the majority of the court. The defendant hired from one Farrell a truck, team of horses and a driver for the lump sum of seven dollars a day. In the ordinary course of business the truck was loaded by the employees of the defendant and the driver, the plaintiff herein, delivered said load where instructed.

I agree, within the rule laid down by *Schmedes* v. *Deffaa* (153 App. Div. 819; revd. on the dissenting opinion of MILLER, J., 214 N. Y. 675) and *Hartell* v. *Simonson & Son Co.* (218 id. 345), that so far as third persons were concerned, the plaintiff although in the general employ of Farrell, became, *pro hac vice*, the servant of the defendant, and, for torts committed by him while engaged in performing work for the defendant, that is, in driving the horses while delivering its material, it was responsible under the doctrine of *respondeat superior*. As stated by Mr. Justice MILLER in the *Schmedes Case* (*supra*): "The rule *respondeat superior* applies with the same force to a borrowed as to a regular employee. * * * In the *Standard Oil Company Case* [212 U. S. 215] Mr. Justice MOODY referred to the accepted reason for the rule as given by Chief Justice SHAW in the oft-quoted case of *Farwell* v. *Boston & Worcester Railroad Corporation* (4 Metc. 49), *i. e.*, that the master is held liable for the wrongs of his servant because the latter is conducting the master's affairs, a reason which, I think,

is sometimes overlooked in determining the master's liability both to servants and to third parties. "

But the case at bar does not come within that principle. The defendant is not being asked to respond in damages to a third person for the negligent act of his borrowed servant. It has been held liable to that servant for furnishing defective ways, works and plant to that borrowed servant, which it did not furnish, that is, for a defect in a wagon which it hired with horses and that servant from the servant's general employer. That is an extension of the doctrine to which I am not prepared to agree. It puts the burden of responsibility and of inspection upon the hirer where, it seems to me, it does not belong.

I think the judgment apppealed from should be reversed.

LAUGHLIN, J., concurred.

Judgment and order affirmed, with costs.