MARTIN STAPLETON, an Infant, by ELLEN STAPLETON, His Guardian ad Litem, Respondent, *v.* LEWIS BUTENSKY and KNICKERBOCKER ELECTROTYPE COMPANY, Appellants.

First Department, June 13, 1919.

**Master and servant — bailment — negligence — liability of employer of horse, wagon and driver for injuries to boy bitten by horse — evidence as to vicious propensities of horse — liability of owner to bailee and also to third persons — owner chargeable with notice and knowledge of its servant as to vicious propensity of horse — pleading — complaint — allegations not sufficiently broad to embrace injury to eye — when admissibility of incompetent testimony not waived by failure to object — appeal — when Appellate Division will not estimate amount of verdict allowed on account of inadmissible testimony.**

In an action for damages for personal injuries sustained by a school boy, by being bitten by a horse standing in front of a building occupied by the defendant company, it appeared that the driver of the horse was under

contract with the defendant company to furnish a horse, a delivery wagon and his own services during certain specified hours; that at the time of the accident the individual defendant and his brother who conducted a livery and boarding stable had full charge of the horse, which they owned, having purchased it from the driver and rented the use thereof to him, and that there was evidence that the horse had previously snapped at people as they passed by. It was uncontroverted that the horse was never muzzled to prevent him from biting people.

*Held,* that the evidence adduced by the plaintiff, if believed by the jury, was sufficient to show that the horse was vicious and to charge the owner of the livery stable with knowledge of his vicious propensities.

The question of *scienter* ordinarily arises on testimony tending to show actual or constructive notice to the owner or notice to his servants or agents, which is imputable to him.

The jury were warranted in inferring that a horse manifesting a vicious propensity to snap at people on the street would also manifest it about the stable and on the occasions when he was under the observation of the owners or their servants and that in the exercise of proper care they would have discovered it.

If, with knowledge of the vicious propensity of the horse, the owners let the use thereof, the bailment did not relieve them from liability.

The owners would be liable to a bailee if not warned, and would also be liable to third parties on the theory that the horse was too dangerous for the purpose for which it was let or on the theory of negligence in not notifying the bailee and equipping the horse with a muzzle or other appliance to prevent his biting.

The defendant company was chargeable with the notice and the knowledge of its servant acquired while acting for it with respect to the propensities of the horse employed and used by it in the performance of its business.

Said company by employing the driver in question assumed the risk of his incompetency, and also of the suitableness and safety of the horse and wagon by accepting and using them.

The allegations of the complaint are not sufficiently broad to embrace injuries to the plaintiff's eye, in view of the rule that where there is an attempt to particularize the injuries, the general allegations are deemed limited thereby.

The defendants did not waive objection to testimony as to injury to the plaintiff's eye by allowing him to testify thereto without objection, it appearing that the plaintiff made no motion to conform the complaint to the evidence thus received, and that the court was of the opinion that said injuries were embraced within the allegations of the complaint.

Under the circumstances the Appellate Division would not be warranted in attempting to estimate the amount the jury allowed on account of the inadmissible testimony relating to the injuries to the plaintiff's eye and in sustaining the verdict in a reduced amount, even if the plaintiff were willing to so stipulate.

APPEAL by the defendants, Lewis Butensky and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 16th day of December, 1918, upon the verdict of a jury for $3,500, and also from an order entered in said clerk's office on the 12th day of December, 1918, denying defendants' motion for a new trial made upon the minutes.

*Harris Koppelman,* for the appellant Butensky.

*Reginald F. Isaacs* of counsel [*Powell, Silver & Welch,* attorneys], for the appellant Knickerbocker Electrotype Company.

*George F. Hickey* of counsel [*Thomas E. Flynn,* attorney], for the respondent.

LAUGHLIN, J.:

This is an action for damages for personal injuries sustained by the plaintiff by being bitten by a horse on the 11th day of January, 1916, when he was about nine years of age. The defendant company, as its name implies, was engaged in the electrotyping business and in delivering the products of its factory to its customers in the borough of Manhattan, New York. In January, 1911, one McGuire made an oral contract with it by which he was to furnish a horse, a delivery wagon and his own services in delivering its goods from eight A. M. until five-thirty P. M. each working day and to receive in consideration therefor the sum of twenty-seven dollars per week. McGuire then owned the horse in question, which is described as a bronco, and as a Canadian horse, and weighed between 900 and 1,000 pounds. The appellant Butensky and his brother, who died during the pendency of the action, conducted a livery and boarding stable, and between the working hours from the time McGuire so entered the employ of the defendant company until after the accident they had full charge of the horse, at first under an arrangement with McGuire by which they boarded the horse, and during about three years prior to the accident as owners, having purchased the horse from McGuire and rented the use thereof to him for an agreed compensation of ten dollars per week. McGuire at first hired, but at the time of the accident owned, the delivery

wagon and it had painted on it the name of the appellant company; and from the time of his original employment by the appellant company until long after the accident he continued in its employ on the terms stated, furnishing the horse, wagon and his own services, with the exception of the last eight months of his employment, during which he used another horse. It does not appear that his contract with the company required him to furnish *any particular* horse or wagon, but merely a horse and wagon. The evidence shows that his services with the horse and wagon were rendered exclusively to the company during the hours specified in the contract of employment, and that he reported daily at eight A. M. at the company's place of business, which was on the southerly side of Thirty-third street, between Ninth and Tenth avenues, in the borough of Manhattan, New York; and that he performed the services assigned to him each day until five-thirty P. M., at times working in the factory wrapping up packages for delivery. It is to be inferred from the evidence that he loaded the company's goods and unloaded and delivered them where he was sent as directed by the company and then returned to the factory for further orders. The accident happened at about twelve-forty-five P. M. when the horse attached to the wagon was standing on the southerly side of the street in front of the building, the eighth floor of which was occupied by the appellant company. Doubtless liability might be charged and shown either on the theory of negligence in handling the horse, or on the theory that the animal was vicious. (*Clowdis* v. *Fresno Flume & I. Co.*, 118 Cal. 315; *Gropp* v. *Great Atlantic & Pacific Tea Co.*, 161 App. Div. 859; *Schoenfeld* v. *Mott Avenue Realty Co.*, 168 id. 91; 1 R. C. L. 1095, § 38; Id. 1109, § 53.) It does not appear whether or not the horse was hitched. But it is not argued that the liability for the horse's biting and kicking could be predicated on the ground of negligence only in failing to tie or otherwise secure the horse, and we express no opinion on that point for there are authorities which hold or tend to hold that such consequences of a failure to secure the horse could not be foreseen. (See *Cox* v. *Burbidge*, 13 C. B. [N. S.] 430; *Farber* v. *Roginsky*, 123 App. Div. 38.) McGuire testified that he put the feed bag containing oats around the horse's head, chained the

wheels of the wagon, then went up into the company's factory to eat his lunch, and that while thus engaged, and not in sight of the horse, he was informed of the accident. Across the street from the factory was St. Michael's School, which the plaintiff and an older brother attended, and adjacent to the factory and on the same side of the street was a fire engine house, in front of which the school children were accustomed to congregate during the noon hour to watch the firemen washing the engines. The plaintiff had, with other school children, been doing this during the noon hour on the day of the accident, and at the time he was bitten by the horse was walking easterly on the southerly sidewalk toward a crosswalk leading over to the school. While he was passing the horse, and some three or four feet from the curb, according to his testimony, " the horse put his feet upon the curb and snapped quick and caught me hair and lifted me up," and then dropped him to the sidewalk, cutting his head so it bled. Other evidence offered by the plaintiff tends to show that the horse kicked him and that the injuries resulted in leaving a permanent scar on the left side of the plaintiff's head about an inch and a half in length, and caused him to be cross-eyed, and resulted in the development or spreading of a cast in his right eye which permanently affected his sight. With respect to the manner as to how the accident occurred the plaintiff was substantially corroborated by two eye witnesses who were upon the street in the vicinity at the time, and they say there was no feed bag over the horse's head and they and another witness also testified that during a period of from six weeks to two months prior to the accident they had observed the horse on other occasions step upon the curb and snap at children and at adults, and one of them says that on a former occasion the horse snapped at him. The testimony on the part of the plaintiff tends to show that neither at the time of the accident nor on other occasions when the horse snapped at people was there any one playing with the horse or in any manner teasing him and that those who were attacked were merely passing along the sidewalk. One of the witnesses for the plaintiff who testified to having seen the horse snap at passersby on former occasions also testified that he drew

this to the attention of McGuire, and that about two weeks before the accident he heard the elevator operator draw McGuire's attention to the fact that the horse snapped at people. McGuire denied that he ever knew or had been informed that the horse was vicious or attempted to bite any one before he bit the plaintiff. The uncontroverted fact is that the horse was never muzzled to prevent him from biting people. There is no other evidence tending to show knowledge on the part of the appellants' with respect to the vicious propensities of the horse. The appellant Butensky and his stable manager testified that during the five years preceding the accident they had taken care of the horse, hitching him up, harnessing him and unharnessing him and that they had never known of his attempting to harm or injure any one, and that they had seen him hitched to a wagon hours at a time when children were passing and never saw him bite or attempt to bite any one.

I am of the opinion that the evidence adduced by the plaintiff, if believed by the jury, was sufficient to show the horse was vicious and to charge the appellant Butensky with knowledge of his vicious propensities. Ordinarily the question of scienter arises on testimony tending to show actual or constructive notice to the owner or notice to his servants or agents which is imputable to him. (*Brice* v. *Bauer*, 108 N. Y. 428; *Gropp* v. *Great Atlantic & Pacific Tea Co.*, 141 App. Div. 372; 161 id. 859, 862; *Niland* v. *Geer*, 46 id. 194; *Soronen* v. *Von Pustau*, 112 id. 437; *Twigg* v. *Ryland*, 62 Md. 380; *Gooding* v. *Chutes Co.*, 155 Cal. 620; 1 R. C. L. 1092, § 35; Id. 1108, § 51; 3 C. J. 96, § 328.) Although McGuire was not in the employ of the owners of the horse, it has been clearly intimated, if not decided, in some cases, that the owner of a dog or horse is chargeable with knowledge of his vicious propensities manifested to one in whose custody the owner has placed the animal (*Earl* v. *Van Alstine*, 8 Barb. 630; *Soronen* v. *Von Pustau*, 112 App. Div. 437; 3 C. J. 96, § 328, and cases cited); but it is not necessary to decide that point of law for in the case at bar the jury were warranted in inferring that a horse thus manifesting this vicious propensity would also manifest it about the stable and on the occasions when he was under the observation of the owners or their

servants, and that in the exercise of proper care they would have discovered it. (*Perrotta* v. *Picciano*, 186 App. Div. 781; *Turner* v. *Craighead*, 83 Hun, 112; affd., on General Term opinion, 155 N. Y. 631; *Harris* v. *Carstens Packing Co.*, 43 Wash. 647; *Emmons* v. *Stevane*, 77 N. J. L. 570, 573; 1 R. C. L. 1091, § 34; 3 C. J. 89, 90, 96, §§ 318, 327, and cases cited.) If with knowledge of the vicious propensity of the horse the owners let the use of the horse to McGuire during the hours of each week day as stated, I think the bailment did not relieve them from liability. The authorities cited holding the bailee, only in such case, liable for *trespass* by an animal are not in point. The owner would be liable to the bailee if not warned (*Talmage* v. *Mills*, 80 App. Div. 382; *Emmons* v. *Stevane, supra*), and I fail to see why, on principle, he would not remain liable to third parties on the theory that the horse was too dangerous for the purpose for which the horse was let or of negligence in not notifying the bailee, and equipping the horse with a muzzle or other appliance to prevent his biting. (See *Mahoney* v. *Dwyer*, 84 Hun, 348; *Mills* v. *Bunke*, 59 App. Div. 39; *Hammond* v. *Melton*, 42 Ill. App. 186; *Farber* v. *Roginsky*, 123 App. Div. 38; *Moynahan* v. *Wheeler*, 117 N. Y. 285; *Bell* v. *Leslie*, 24 Mo. App. 661.) Counsel for the owner cites Shearman and Redfield on the Law of Negligence (Vol. 3 [6th ed.], § 635) as authority for his contention that the bailor for hire of a vicious horse known to him to be vicious is not liable for injuries inflicted by the horse while in the custody of the bailee, but the authorities cited by the learned authors for a general statement in the text claimed to be authority for such contention merely hold that the bailor is not liable for the consequences of the negligent management of the horse by the bailee, and other parts of the section and other authorities therein cited indicate that such is not the rule where the injuries result from the known viciousness of the animal. The liability of the appellant company, however, if it be liable, must be predicated upon another ground. I am of the opinion that its liability depends upon whether it is chargeable with the notice and knowledge its servant McGuire had of the vicious propensity of the horse. It is perfectly clear on the evidence that the relationship of master and servant existed between McGuire and the company and

that in driving the horse in making deliveries and in returning therefrom and in leaving the horse in the street unattended, McGuire was acting as the servant of the company and that it would be answerable to any one sustaining injuries or damages by reason of McGuire's negligence. (*Howard v. Ludwig*, 171 N. Y. 507; *Baldwin v. Abraham*, 57 App. Div. 67; affd., 171 N. Y. 677; *Miller v. North Hudson Contracting Co.*, 166 App. Div. 348; affd., 222 N. Y. 551; *Gorney v. City of New York*, 102 App. Div. 259; *Waters v. Pioneer Fuel Co.*, 52 Minn. 474; *Postal Tel. Co. v. Murrell*, 180 Ky. 52; *Burns v. Michigan Paint Co.*, 152 Mich. 613.) McGuire was also in the company's employ and its servant when, according to the testimony on behalf of the plaintiff he was informed of the vicious propensity of the horse manifested on former occasions. There can be no doubt, I think, but that the wagon and the horse as well as McGuire were in the employ of the company and were being used in the performance of its business and that if any one lawfully upon or near the wagon sustained injuries through its being negligently unsafe or out of repair the company would be liable. (*Green v. McMullen, Snare & Triest, Inc.*, 177 App. Div. 771.) The majority of this court held in the case of *Green v. McMullen, Snare & Triest, Inc.* (*supra*) that the employer owes a duty to the employee furnishing the wagon to inspect it and to maintain it in a reasonably safe condition, and according to that decision the company would be liable to McGuire for injuries sustained even by him owing to a defect in the wagon if it failed to exercise proper care in inspecting, repairing or equipping it. It follows logically that the company would be likewise liable, if McGuire, while acting for it, knowing that the horse was liable to become frightened or to run away, failed to exercise proper care in driving the horse or in securing him in the light of such knowledge. I realize that to hold the company liable on these facts would constitute an extension of the doctrine of the adjudicated cases, for it is manifest that it was to McGuire's interest to conceal from his employer any knowledge he had with respect to the vicious propensities of the horse. But on principle, I think, the company was chargeable with the notice and the knowledge of its servant acquired while acting for it with respect to the propensities of

the horse employed and used by it in the performance of its business. (See *Schmedes* v. *Deffaa*, 153 App. Div. 819, dissenting opinion of MILLER, J., on which revd., 214 N. Y. 675; and *Hartell* v. *Simonson & Son Co.*, 218 id. 345.) If McGuire had not furnished the horse but had been authorized by the company to hire or buy the horse for it the company would be chargeable with knowledge of any information obtained by him, or which should have been so obtained. The company by employing McGuire as a driver assumed the risk of his incompetency and, I think, it likewise assumed the risk of the suitableness and safety of the horse and wagon by accepting and using them. I am, therefore, of opinion that both appellants may be liable but there are serious objections to the recovery against both under the complaint as it stands unamended which we do not deem it necessary to discuss for they may be obviated on the new trial rendered necessary for other reasons.

Another point, however, is based on the reception of evidence relating to the question of damages. The only allegations of the complaint regarding the injuries are as follows: As a result thereof, plaintiff received personal injuries, has suffered bodily and mental pain, and has been made sick, sore, lame and disordered; that plaintiff's injuries consist among other things of injuries over his head, laceration of the scalp, severe injuries to the nervous system and shock, all of which will leave permanent results; that said injuries necessitated medical care and attention and will necessitate the same in the future; that said injuries necessitated the incurring of expenses therefor, and interfered with plaintiff in the performance of his lawful duties, and will interfere with him in the future.

The plaintiff in testifying with respect to his injuries said that his head felt dizzy for about two weeks after the accident; that afterwards he had dizzy spells for a time, and he said that after he was able to leave his bed, when he tried to read or study, " I couldn't see, there was all blue things in front of my eyes," by which he meant " a sort of blur," and that he could not read and had to wear glasses, but had not required them before; that one of his eyes was " turned " and that he did not have the " turn " before the accident; that even

with the glasses his sight becomes blurred " a little bit " when he studies; that he had no trouble with his eyes before the accident, and that when the blurred condition comes on him it causes pain and dizziness so that he has to stop studying. This testimony was received without any objection and he was cross-examined with respect to it, and no motion was made to strike it out as not being within the issues. The mother of the plaintiff was next called and she testified that there was nothing the matter with his eyes before the accident and that they were neither turned nor weak. Thereupon objection was made by counsel for the appellant company on the ground that the complaint contained no allegation of any injury affecting the plaintiff's eyes, whereupon counsel for the plaintiff drew attention to the general allegations of the complaint, and said he would connect it by proper medical testimony; and the objection was overruled and an exception taken. By thus overruling the objection and allowing an exception the court regarded the objection, in effect, as a motion to strike out. Later on counsel for the plaintiff propounded a hypothetical question to the doctor who attended the plaintiff embracing, among other things, the substance of the testimony given by plaintiff with respect to the changed condition of his eyes and sight, and asked whether the injury produced by the horse was a competent producing cause for all the conditions enumerated. Counsel for the company objected as incompetent, irrelevant and immaterial, and upon other grounds, but not specifically upon the ground that it embraced facts not pleaded. The objection was overruled and an exception taken, and thereupon the attorney for the other appellant objected upon the ground that the injuries specified were not pleaded. That objection was overruled and an exception taken, and the witness answered in the affirmative. Plaintiff called a medical expert who specialized in the treatment of diseases of the eyes and who examined plaintiff during the trial. He was asked what he found with respect to the condition of the plaintiff's sight, and eyes. This was objected to upon the ground that no injury to the eye was pleaded. The objection was overruled and an exception taken, and the witness testified to an impairment of the vision of the right eye, and to a pronounced cast or turning

thereof inwardly. He was also allowed, over objection duly made on behalf of both appellants, to the effect that no injury to the eye was pleaded, to answer the hypothetical question embracing the injuries to the eye, and he answered that the bite would be a competent producing cause of both.

It is quite clear, I think, that the allegations of the complaint are not sufficiently broad to embrace the injuries consisting of the turning of the eye ball inwardly and to the eyesight, for the rule is now well settled that where there is an attempt to particularize the injuries, the general allegations are deemed limited thereby. (*Keefe* v. *Lee,* 197 N. Y. 68; *Kurak* v. *Traiche,* 226 id. 266.) The verdict was for $3,500 and there can be no doubt but that it was largely predicated on the loss of sight and the injury to the eye. It is contended that the appellants, having allowed the plaintiff to testify on these subjects without objection, must be deemed to have waived any objection to the testimony. But the plaintiff made no motion to conform the complaint to the evidence thus received without objection, and from the subsequent rulings it is evident that the court was of the opinion that these injuries were embraced within the allegations of the complaint, for the record contains nothing indicating that the evidence subsequently objected to was received on the theory that the objection had been waived. If the court had intimated that the rulings had been made upon that ground, the appellants might have moved to strike out the testimony of the plaintiff on this point. But in view of the rulings they were warranted in assuming that such a motion would have been of no avail. If they had made such a motion, doubtless, it would have rested in the discretion of the trial court whether or not to grant it, since no objection was interposed to the testimony; but at most the appellants could only have been compelled to have submitted to the jury the evidence to which no objection had been made; and they were not precluded from objecting to having it sustained by the testimony of the physician and medical expert. This court would not be warranted, I think, in attempting to estimate the amount the jury allowed on account of the inadmissible testimony, and in sustaining the verdict in a reduced amount, even if the plaintiff were willing to stipulate a reduction.

It follows, therefore, that the judgment and order should be reversed and a new trial granted, with costs to the appellants to abide the event.

MERRELL and PHILBIN, JJ., concurred; CLARKE, P. J., and SMITH, J., concurred in result.

Judgment and order reversed and new trial ordered, with costs to appellants to abide event.