RUTH HOROWITZ, an Infant, by SAMUEL HOROWITZ, Her Guardian ad Litem, and SAMUEL HOROWITZ, Plaintiffs, *v.* DAILY MIRROR, INC., and CHARLES GROGAN, Defendants.

Supreme Court, New York County, March 22, 1932.

*Feltenstein & Rosenstein* [*M. Feltenstein* of counsel], for the plaintiffs.

*Bernard J. Vincent* [*J. G. Reilly* of counsel], for the defendant Daily Mirror, Inc.

*Ralph Copland,* for the defendant Charles Grogan.

COTILLO, J. The outcome of this action resolves around the question as to whether or not the relation of master and servant existed between the defendants *Daily Mirror, Inc.,* and Charles Grogan. From a reading of the contract between these defendants, it would seem that Charles Grogan did not have the status of employee of the defendant *Mirror,* but rather stood in the position of an independent contractor. Under the agreement in question, Grogan, for a stated sum, was hired as a contractor, with his automobile, to load, transport and deliver merchandise for the defendant *Mirror;* but from the evidence adduced at the trial it seems that Grogan was known as a " recovery man " and had been working in that capacity at the time of the accident for a period of about six years. Although named a contractor in the written agreement, nevertheless, his job was to go over the territory of the city of New York, after a paper distributing agency had covered the field earlier, and to recover that territory for the purpose of supplying the dealers that sold a number of the earlier copies with the later edition which he (Grogan) would then be carrying.

He worked from eight to five-thirty every day, reporting at the *Mirror's* office each morning. He worked for nobody else but the *Mirror,* and that was his sole occupation. He would carry about 800 or 900 papers from the *Mirror* plant at the commencement of his delivery. In Grogan was vested absolute discretion in the number of papers that he would deliver to the various newsdealers; he further was invested with the discretion to substitute for some of the unreturnable issue originally distributed by the Metropolitan Distributors a corresponding number of the returnable editions delivered by him. This fact goes a good way toward determining the relation between Grogan and the *Mirror,* because under the contract between the Metropolitan Distributors and the defendant *Mirror,* the papers which were delivered by the Metropolitan Distributors to the various newsstands were not returnable, while those delivered by Grogan were, at his discretion, returnable. Grogan also had the right to make collections; that is, he would collect from the various newsdealers the price of the papers, and he was also permitted to extend credit to the newsmen.

This work was done by Grogan under the immediate supervision

of Brill, concededly the foreman of the defendant *Mirror*, and it was from Brill that Grogan's authority to use discretion was derived.

As was said in *Baldwin* v. *Abraham* (57 App. Div. 67; affd., 171 N. Y. 677): " The true test as to whether the relation of master and servant exists is not necessarily the payment of wages, but is whether at the time of the injury complained of the alleged servant was engaged in the business of the alleged master, and subject to his direction and control. It is not so much the actual exercise of control which is regarded, but the right to exercise such control."

In *Stapleton* v. *Butensky* (188 App. Div. 237) the defendant employed one McGuire, together with his horse and wagon, to make deliveries. McGuire was to work from eight to five-thirty each day, and was to be paid by the week. McGuire owned the horse and wagon, but in making deliveries for the defendant, the defendant's name was inserted on the side of the truck. His services during working hours were rendered exclusively for the defendant, and he loaded and unloaded the defendant's merchandise himself. The plaintiff, a third person, was injured while McGuire was making deliveries. The court said: " McGuire was also in the company's employ and its servant when, according to the testimony on behalf of the plaintiff, he was informed of the vicious propensity of the horse manifested on former occasions. There can be no doubt, I think, but that the wagon and the horse, as well as McGuire were in the employ of the company and were being used in the performance of its business."

The *Stapleton* case seems to be on all fours with the case at bar, the sole difference being that in the *Stapleton* case the contract was oral, while in the one under consideration the contract was written. Although the automobile was owned by Grogan, under the terms of the contract it was to be used in the exclusive business of the defendant, who was permitted the right to carry on the side of such car such advertising as it chose. It did carry on such advertising the name " *Mirror*," which was the name under which the defendant published its newspaper.

It needs but little argument to convince reasonably minded persons that a person or corporation which retains title and ownership to its product and responsibility for the loss or destruction thereof, which pays another person for the transportation of that product to designated places by the use of a truck and a person in the company's employ, would not desire to intrust the cargo to a mere stranger. It would desire to reserve to itself the power to direct him where and how to make these deliveries. The defendant *Daily Mirror* did precisely that in the instant case.

In *Matter of Glielmi* v. *Netherland Dairy Co.* (254 N. Y. 60) the Court of Appeals has held that a salesman employed by the defendant company to sell its product was an employee and not an independent contractor. There the court ruled that the fact that the ownership of the products which the salesman was vending was in the defendant rather than the salesman was a vital bit of evidence on the proposition of whether he was an employee or an independent contractor. Quoting Judge Cardozo in that case: "On the one side there is an intimacy of control and on the other a fullness of submission that imports the presence of a 'sovereign,' as the master."

I find in this case that the evidence indicates the relationship of master and servant between the defendant *Mirror* and the defendant Grogan. I further find that the accident happened solely by reason of the negligence of Grogan as the employee of the *Daily Mirror, Inc.*, without any negligence on the part of the plaintiff contributing.

Upon the analysis of the testimony submitted as to the plaintiff's injuries and her present condition which I find resulted from the injuries, I direct that judgment be entered in favor of the plaintiff against the defendant *Daily Mirror, Inc.*, in the amount of $12,500.